UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOE HAND PROMOTIONS, INC.,

Plaintiff,

v.

SEKOU A STRIVERS, ET AL.,

Defendants.

No. 2:13-cv-0937 LKK AC

FINDINGS & RECOMMENDATIONS

On November 20, 2013, the court held a hearing on plaintiff's application for default judgment against defendant Sekou A. Strivers, individually and doing business as Sekou's BBQ Fried Chicken, Fish and Seafood; and Strivers Enterprises, LLC. Thomas Riley appeared for plaintiff. No appearances were made for defendants. On review of the motion, the documents in support, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 2013, plaintiff, a nationwide distributor of sports programming, filed a complaint against defendants alleging that the latter unlawfully intercepted and exhibited a live broadcast of a program entitled "Ultimate Fighting Championship 146: Junior Dos Santos v. Frank Mir" ("the Program") in the establishment on May 26, 2012 for commercial advantage without obtaining a sublicense from plaintiff for its use, in violation of the Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553, and state law. The

complaint alleges defendant exhibited the Program on June 11, 2011.

Per plaintiff, defendant Sekou A. Strivers is a managing member of Strivers Enterprises, LLC, which owns and operates the commercial establishment doing business as Sekou's BBQ Fried Chicken, Fish and Seafood, located at 455 Bercut Drive, Sacramento, California 95811. Plaintiff also asserts that Sekou A. Strivers is the individual identified on the California Alcoholic Beverage and Control license issued for Sekou's BBQ Fried Chicken, Fish and Seafood, and that he had dominion, control, oversight and management of the commercial establishment.

Plaintiff brings the following claims: (1) a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations; (3) a claim for conversion alleging that defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit; and (4) a violation of the California Business & Professions Code § 17200, et. seq.

In the complaint, plaintiff seeks $110,000 in statutory damages as well as attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and costs for Count II; compensatory, exemplary, and punitive damages, as well as attorneys' fees and costs for Count III; and restitution, declaratory relief, injunctive relief, and attorneys' fees for Count IV.

The summons and complaint were served on defendants by personal service on August 29, 2013 on Sekou A. Strivers, individually and as the authorized agent for service for Strivers Enterprises, LLC. ECF Nos. 12-13; Fed. R. Civ. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction). Defendants have failed to file an answer or otherwise appear in this action. The clerk entered default against defendants on September 26, 2013.

Request for entry of default and the instant motion for default judgment and supporting papers were served by mail on defendants at defendant Sekou Strivers's home address. ECF No. 18-1. Defendants did not file an opposition to the motion for entry of default judgment. Plaintiff seeks an entry of default judgment in the amount of $111,300 ($10,000 for statutory damages

pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $100,000 for enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and $1,300 for conversion).

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law"

(citation and quotation marks omitted).); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

## DISCUSSION

### A. The Eitel Factors

#### 1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

#### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Plaintiff seeks entry of default judgment on its claim brought pursuant to 47 U.S.C. § 605(a). Plaintiff's inability to allege the precise nature of the intercepted transmission in this case, which is largely due to defendant's failure to appear or defend itself in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision. Here, plaintiff has not alleged whether the transmission that defendant intercepted was from a cable system or a satellite television signal. At a minimum, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of

the Program and broadcast it to its patrons. Plaintiff essentially concedes that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be prejudiced" given defendants' failure to appear or defend themselves in this action. Pl.'s Memo. of P. & A. in Supp. of Motion for Default J. at 8. The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendants' failure to appear or defend themselves in this action, plaintiff should not suffer the resulting prejudice. Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount plaintiff would be permitted to recover under the statute, including enhanced damages. In addition, plaintiff seeks compensatory and punitive damages for defendant's tortuous conversion of plaintiff's property. Plaintiff notes defendant would have been required to pay only $1,300 to broadcast the Program at the establishment, but plaintiff asserts nominal damages have proven insufficient to combat piracy and that defendant therefore should be required to pay the statutory maximum. Thus, plaintiff seems to concede that amount of damages requested is not proportional to defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum

of money at stake would disfavor default damages," such as damages totaling $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); but see J & J Sports Productions v. Hernandez, 2010 WL 1980186, at *4 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). As discussed below, however, the court declines to enter judgment in the amount requested. Consequently, the factor does not weigh against plaintiff.

4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff served the defendants with the summons and complaint. Moreover, plaintiff served defendants by mail with notice of its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have not appeared in this action to date. Thus, the record suggests that defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

////

////

6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and will make a recommendation to that effect. What remains is the determination of the amount of damages to which plaintiff is entitled.

B. Terms of Judgment

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $5,000 as a result of defendants' unlawful interception and broadcast of the Program, and will recommend the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

Here, plaintiff seeks a judgment in the amount of $111,300. Plaintiff's application for

default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,300 as compensatory damages arising from defendants' act of conversion.

In this case, plaintiff's investigator provided evidence that the establishment, which has a capacity of 150-200 patrons, had under than 31 patrons at any one time while he was there, that there was no cover charge, that the Program was displayed only at the request of a patron, and that the Program was shown on only two of the eight television sets in the establishment. Affiant Decl., ECF No. 18-3. Although defendants' establishment has a large capacity, there is no evidence of a repeat violation or additional egregious circumstances. The investigator did not report that there was a cover charge for entry on the night in question. There is no evidence before the court of any promotion by defendants that the fight would be shown at the establishment. There is also no evidence before the court that a special premium on food and drink was being charged at the establishment on the night of the fight or that the establishment was doing any greater level of business on the night the fight was shown than at any other time. Finally, plaintiff has presented no evidence to the court suggesting that the defendants are a repeat broadcast piracy offender. Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the undersigned will recommend an award of statutory damages in the amount of $5,000. On the record before the court, the undersigned does not find that this case merits an award of enhanced damages.

Plaintiff also seeks actual damages for defendants' alleged tortious act of conversion in the amount of $1,300, which consists of the fee that defendants would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense. The undersigned will not recommend an award of damages with respect to plaintiff's conversion claim. The statutory damages provisions at issue serve not only a deterrent function, see J & J Sports Prods. v. Orellana, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. See 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i). Here, the recommended award of statutory damages in the amount of $5,000

sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, the undersigned will recommend that plaintiff be awarded no damages on its conversion claim.

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the application for default judgment contains no argument or evidence in support of such a request. Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application for default judgment be granted;

2. The court enter judgment against defendants on plaintiff's claims brought pursuant to 47 U.S.C. § 605(a);

3. The court award statutory damages in an amount of $5,000.00 to plaintiff; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: December 27, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE